```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
JOSEPH T. BENOIT,

                          Plaintiff,                    07-CV-6407
            v.

THE PRUDENTIAL INSURANCE COMPANY                        DECISION
OF AMERICA,                                             and ORDER

                          Defendant.
_____
```

## INTRODUCTION

Plaintiff Joseph T. Benoit ("plaintiff") brings this action claiming that he is entitled to proceeds from The Prudential Insurance Company of America ("Prudential" and/or "defendant") under a group accidental death and dismemberment insurance policy issued to Oppenheimer Funds, Inc. ("Oppenheimer Funds"). Plaintiff originally filed his Complaint in the Supreme Court of the State of New York, County of Monroe on April 12, 2007. A copy of the Summons and Complaint was received by Prudential on or about July 24, 2007. The instant suit was removed from New York State Supreme Court on August 17, 2007,[1] and Prudential now moves for summary judgment[2] arguing that: by the terms of the policy, plaintiff is time-barred from bringing the instant suit; or alternatively substantial evidence

---

[1] Prudential filed a Notice of Removal on the grounds that this Court has original jurisdiction over this action under 28 U.S.C. §1331 since the underlying claims at issue involve rights and liabilities governed by the Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.* ("ERISA").

[2] Plaintiff's opposition papers were originally stricken by this Court by Order dated June 18, 2008 for failure to comply with the Local Rules since they were filed two weeks late. By fax dated June 19, 2008, plaintiff's counsel indicated to the Court that counsel would be filing a motion seeking leave of Court to file opposition papers by "Monday morning," which presumably was June 23, 2008. On July 1, 2008, plaintiff filed a Motion To Seek Leave of the Court to File Opposition Papers to Prudential's Motion for Summary Judgment, which the Court granted. Thus, the Court will consider the opposition papers filed by plaintiff on June 17, 2008.

supports defendant's decision denying plaintiff's benefits under either an abuse of discretion standard of review or de novo review. For the reasons set forth below, Prudential's motion is granted.

## BACKGROUND

At the outset, the Court applies Local Rule of Civil Procedure 56.1. That rule requires that the moving party include with its motion for summary judgment a "separate, short, and concise statement of the material facts to which the moving party contends there is no genuine issue to be tried." See W.D.N.Y. Loc. R. Civ. P. 56.1(a). Prudential has complied with this rule. See Def.'s Statement of Material Facts Docket # 15 ("SOMF"). The rule also imposes a duty on the opposing party, in this case, the plaintiff. In that regard, it states, "[t]he papers opposing a motion for summary judgment shall include a separate, short, and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried." See W.D.N.Y. Loc. R. Civ. P. 56.1(b). The Local Rules also provide that "[e]ach statement of material fact by a movant or opponent must be followed by citation to evidence which would be admissible, as required by Federal Rule of Civil Procedure 56(e)," with citations identifying "with specificity" the relevant page or paragraph of the cited authority. See id. R. 56.1(d). Since plaintiff has only partially complied with Rule 56.1(b) and 56.1(d), the third paragraph of Rule 56.1 comes into play. It reads: "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted *unless* controverted by the

statement required to be served by the opposing party." See id. R. 56.1(c) (emphasis added). In view of this provision, the Court deems admitted all of Prudential's statements of facts contained in its May 1, 2008, Statement of Material Facts Pursuant to Local Rule 56.1 (see Docket # 15). Accordingly, the undisputed facts are as follows:

**I.  The Policy**

Plaintiff was involved in a one car accident which occurred on November 3, 2002. The accident resulted in injuries rendering plaintiff a paraplegic. Due to his employment with Oppenheimer Funds, at the time of the accident plaintiff was a participant under a group accident death and dismemberment policy with Policy Number G-17694 (the "Policy"), which provides for accidental death and dismemberment benefits in the amount of $84,000. The Policy provides for payment of benefits for "loss due to Quadriplegia, Paraplegia, or Hemiplegia." See SOMF ¶ 5. The Policy further provides conditions under which benefits will be paid:

> "Benefits for accidental Loss are payable only if all of these conditions are met:
> 
> (1) You sustain an accidental bodily injury while a Covered Person.
> (2) The Loss results directly from that Injury and from no other cause.
> (3) You suffer the Loss within 90 days after the accident. But, if the Loss is due to Quadriplegia, paraplegia, or Hemiplegia, you suffer the Loss within 365 days after the accident.

Not all such Losses are covered. See Losses Not Covered below." See SOMF ¶ 6. Further, in the section entitled "Losses Not Covered," the Policy provides "A Loss is not covered if it results from ...

[claimant] Being legally intoxicated or under the influence of any narcotic unless administered or consumed on the advice of a Doctor."

See SOMF ¶ 7. In addition, the Policy sets forth the time within which a legal action is required to be filed:

> **Legal Action:** No action at law or in equity shall be brought to recover on the Group Contract until 60 days after the written proof described above is furnished. No such action shall be brought more than three years after the time within which proof of loss is required.

See SOMF ¶ 8. Moreover, "Proof of Loss" is defined in the Policy as follows:

> Prudential must be given written proof of the loss for which claim is made under the Coverage. This proof must cover the occurrence, character and extent of that loss. It must be furnished within 90 days after the date of the loss, except that:
>
> (1)  If any Coverage provides for periodic payment of benefits at monthly or shorter intervals, the proof of loss for each such period must be furnished within 90 days after its end.
>
> (2)  If payment under a Coverage is to be made for charges incurred during a Calendar Year, the proof for that Calendar Year must be furnished within 90 days after its end.
>
> A claim will not be considered valid unless the proof is furnished within these time limits. However, it may not be reasonably possible to do so. In that case, the claim will still be considered valid if the proof is furnished as soon as reasonably possible.

See SOMF ¶ 9. In addition, the Policy contains language granting Prudential sole discretion in evaluating claims. The Summary Plan Description ("SPD") provides "The Prudential Insurance Company of America as Claims Administrator has the sole discretion to interpret the terms of the Group Contract, to make factual findings, and to

determine eligibility for benefits. The decision of the Claims Administrator shall not be overturned unless arbitrary and capricious." See SOMF ¶ 10.

The SPD outlines the claim procedures, which provides that Prudential will notify a claimant of the claim determination within 45 days of receipt of the claim and that the period can be extended a first time for thirty days and then a second time for another thirty days if an extension is necessary for matters beyond the plan's control. If an extension is necessary, a written notice of extension will be provided with the reason for the extension and a date by which the plan expects to decide the claim. The SPD further provides that if an extension is necessary because a claimant is unable to submit necessary information, the time for the administrator to respond to the claim is tolled during the period it takes for the claimant to respond. See SOMF ¶ 11.

With regard to appeals, the SPD states that the plan provides for three appeals, with the third appeal being voluntary. The first appeal may be made within 180 days of receipt by the claimant of the initial denial and that a determination will be made within 45 days of receipt of the appeal by Prudential. The 45-day period may be extended up to 90 days if Prudential determines that special circumstances require an extension of time. If the first appeal is denied, the claimant can submit a second appeal that is subject to the same time periods. If the second appeal is also denied, the claimant has the option of filing a third appeal within the same time

period. As previously mentioned, the third appeal is voluntary and the SPD explains that a claimant can elect to file a lawsuit instead of filing a third appeal. If the claimant elects to file a third appeal, the plan agrees to toll any limitations period while the third appeal is pending. See SOMF ¶ 12.

## II.  **Benefits Claimed By Plaintiff**

Oppenheimer Funds submitted an application on plaintiff's behalf for accidental death and dismemberment benefits pursuant to the Policy on March 11, 2003. The application included an Attending Physician's Statement, which indicated that as a result of an automobile accident that occurred on November 3, 2002, plaintiff suffered "T10 dislocation and T10 paraplegia." See SOMF ¶ 13. During the investigation of plaintiff's claim, Prudential's claims examiner spoke to the Director of the hospital that treated plaintiff on the night of the accident concerning plaintiff's Attending Physician's Statement. The Director informed the claims examiner that plaintiff sustained a fractured injury of the neck which caused a dislocation in the spinal cord, causing paralysis from the waist down. See SOMF ¶ 14. In addition, on two occasions, April 28, 2003 and May 2, 2003, the claims examiner spoke to the Ontario County Police Department. He was informed that according to the police report, plaintiff was intoxicated at the time of the accident. See SOMF ¶ 15.

On June 17, 2003, after the claims examiner's investigation, Prudential informed plaintiff by letter of the intoxication exclusion

under the Policy. Prudential also informed plaintiff that in order to properly review his claim, it had to obtain the Toxicology Report from the Medical Examiner's Office and it was necessary for him to sign a Medical Authorization. Thereafter, plaintiff provided Prudential with the authorization. See SOMF ¶ 16. On July 7, 2003, Prudential received the Toxicology Report from the Monroe County Medical Examiner's Office ("Medical Examiner"), which indicated that plaintiff's blood alcohol level on the date of the accident was 0.15%. See SOMF ¶ 17. Accordingly, by letter dated July 10, 2003, Prudential denied plaintiff's claim for benefits under the Policy. The letter stated that in processing the claim, it reviewed the application provided by Oppenheimer Funds and the Medical Examiner's Report. Further, the letter explained that benefits were being denied because under the Policy, a loss is not covered if the accident results from being legally intoxicated. According to the information provided to Prudential by the Medical Examiner, the letter further advised that plaintiff's blood alcohol level was .15% at the time of the accident, which was above the legal limit of .10% allowed by New York State. See SOMF ¶ 18.

The denial letter also informed plaintiff of Prudential's appeals procedure. It advised that plaintiff could appeal the denial in writing within 180 days of receipt of Prudential's letter and that a decision would be made within 45 days of receipt of his appeal unless special circumstances required an extension. The letter

further informed plaintiff that if the first appeal was denied, he could file a second appeal within the same time frame and if the decision was again denied, he could file a voluntary third appeal within the same time limits. The letter ended by notifying the plaintiff that after the completion of the first two levels of appeals, plaintiff has the option of filing a lawsuit under ERISA. See SOMF ¶ 19. On December 16, 2003, six months after receipt of the denial letter, plaintiff's counsel sent a letter to Prudential on behalf of plaintiff appealing the July 10, 2003 denial of benefits decision. In the letter, plaintiff's counsel argued that while plaintiff pled guilty to driving while impaired, there were significant problems with the blood test since it was administered to plaintiff three hours after the accident and counsel was unaware of what was administered to plaintiff during that time. Counsel also stated that plaintiff informed him that the accident was not caused by any alcohol that he consumed, instead it was due to a cell phone call that he made right before the accident. Plaintiff claimed that after he made the call, his cell phone dropped to the floor and he reached down to pick it up and at that point he lost control of the car. See SOMF ¶ 20. Plaintiff claims that telephone records show that he made a cell phone call in his car just prior to the accident, which he believes contributed to the accident. Pls. SOMF ¶ 6.[3]

---

[3] This evidence, which plaintiff seeks to rely on was never submitted as part of the appeals process or prior to the completion of discovery in this matter. Accordingly, plaintiff has failed to dispute Prudential's Statement of Material facts in support of its summary judgment motion pursuant to Local Rule of Civil Procedure 56.1(c).

Prudential sent plaintiff a letter dated April 13, 2004 stating that plaintiff's letter was being referred to its Legal Department for review and that he would receive an update within thirty days. See SOMF ¶ 21. Prudential then sent a letter referring the claim to its Law Department explaining that the claim was originally denied due to the claims examiner's conversation with the Ontario County police concerning the results of the Toxicology Report. Prudential also advised its Legal Department of plaintiff's contention that the blood was taken three hours after the accident and inquired as to whether this would have any effect on the claim for benefits. See SOMF ¶ 22. Moreover, in reviewing plaintiff's appeal, Prudential sent the claims file to Dr. Robert MacBride on April 26, 2004 for his medical opinion whether plaintiff's contention that the toxicology results were unreliable because his blood sample was drawn three hours after the accident. See SOMF ¶ 23. On April 29, 2004, Dr. MacBride rendered his medical opinion stating that:

> The fact that his BAC was still significantly elevated 3 hrs after the accident strongly suggests that at the time of the accident the claimant would have had a much higher level with even a greater degree of impairment to the operation of a motor vehicle, not less. It is not plausible to consider that the reason for such an elevated BAC was somehow related to "treatment" post accident. (Ethanol administration is not a treatment for life-threatening trauma)
>
> Someone operating a motor vehicle at or above 0.15 mg% would unavoidably be considered functionally impaired with an increased risk of accident as well as subject to being determined legally impaired. With a reasonable degree of medical certainly, the presence of significantly elevated blood alcohol level of 0.15mg% would have been a significant risk for and contributor to the MVA. There is reason to believe the actual BAC level at the time of the MVA would have been even higher than that reported, given the apparent delay in blood sampling.

See SOMF ¶ 24.

In addition, on June 10, 2004, an attorney from Prudential noted that after reviewing plaintiff's appeal letter, plaintiff had submitted no proof that the alleged late removal of the blood impacted the results of the blood test and that if the blood was taken three hours after the incident, the alcohol level in the blood would be lower, not higher. He also noted that plaintiff did not dispute that he was intoxicated at trial and the fact that there was a plea bargain had no bearing on whether plaintiff was intoxicated at the time of the accident. See SOMF ¶ 25. Accordingly, on July 14, 2004 Prudential denied plaintiff's first request for reconsideration of its denial of benefits. Prudential explained that the grounds for denial was the provision in the Policy, which states that a loss is not covered if it results from being legally intoxicated. Further, the letter provided that based on the Toxicology Report submitted to Prudential by the Medical Examiner, plaintiff's blood alcohol level was .15 at the time of the accident, which was beyond the permitted alcohol limit in New York State. See SOMF ¶ 26.

Prudential also indicated that "The fact that [plaintiff's] blood alcohol level was still significantly elevated three hours after the accident strongly suggests that at the time of the accident [plaintiff] would have had a much higher level with an even greater degree of impairment to the operation of the vehicle." Prudential stated that after reviewing the information provided in plaintiff's letter, it made a determination that there was no documentation submitted to demonstrate that plaintiff was not legally intoxicated

at the time of the accident. See SOMF ¶ 27. In its conclusion, Prudential advised plaintiff that he could again appeal the decision in writing and if he elected to do so, the appeal must be submitted within 180 days of receipt of Prudential's letter. It further provided that a decision would be made in writing within 45 days unless special circumstances required an extension. Prudential also informed plaintiff that if the second appeal was denied, he could file a voluntary third appeal or alternatively, he could file a lawsuit under ERISA. See SOMF ¶ 28.

On August 31, 2004, plaintiff's counsel sent a letter to Prudential advising that plaintiff was appealing Prudential's July 14, 2004 denial letter. Plaintiff also stated that he intended to provide medical records from Strong Memorial Hospital, which detailed plaintiff's treatment on the evening of the accident. However, plaintiff never provided these medical records. See SOMF ¶ 29. Subsequently, on September 15, 2004 Prudential denied plaintiff's second request for reconsideration of its denial of benefits. Prudential gave the same explanation as it did in its prior denials and referred plaintiff to its previous letters dated July 10, 2003 and July 14, 2004.[4] See SOMF ¶ 30. Prudential once again concluded by notifying plaintiff that he could appeal the decision to Prudential's Appeal Committee for a final decision in writing and if he elected to

---

[4] Prudential once again responded to plaintiff's contention concerning his blood being taken three hours after the accident took place. The letter stated that the fact that plaintiff's blood alcohol level was still significantly elevated three hours after the accident strongly suggested that plaintiff would have had a much higher level at the time of the accident. After reviewing the information docvuded in plaintiff's letter, Prudential determined there was no documentation showing that plaintiff was not legally intoxicated at the time of the accident. See SOMF ¶ 31.

do so, the appeal must be submitted within 180 days of receipt of Prudential's letter. In addition, the letter stated that the final level of appeal was voluntary and that plaintiff could alternatively file a lawsuit under ERISA. See SOMF ¶ 32. Plaintiff did not file a third appeal. Plaintiff commenced this action in New York State Supreme Court on April 12, 2007. See SOMF ¶ 33.

## DISCUSSION

### I. Summary Judgment Standard

The standard for granting summary judgment is well established. Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). "[T]he movant must make a prima facie showing that the standard for obtaining summary judgment has been satisfied." 11 Moore's Federal Practice, § 56.11[1][a] (Matthew Bender 3d ed.). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant may satisfy this burden by pointing to an absence of evidence to support an essential element of the nonmoving party's claim." Gummo v. Village of Depew, 75 F.3d 98, 107 (2d Cir.1996)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)), cert denied, 517 U.S. 1190 (1996).

The burden then shifts to the non-moving party to demonstrate "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). To do this, the non-moving party must present evidence sufficient to support a jury verdict in its favor. Anderson, 477 U.S. at 249; see also, Fed.R.Civ.P. 56(e)("When a motion for summary judgment is made and supported as provided in this rule, and adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."). Summary judgment is appropriate only where, "after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party." Leon v. Murphy, 988 F.2d 303, 308 (2d Cir.1993).

**II.  Statute of Limitations**

There is no dispute that the statute of limitations governed by this ERISA action is three years. See Smith v. First UNUM Life Ins. Co., 1999 WL 369958 at *3 (E.D.N.Y. 1999) ("[w]here a benefit plan specifies a limitations period shorter than six years ... the contractual period governs."); see also Yuhas v. Provident Life and Cas. Ins. Co., 162 F.Supp.2d 227, 231 (S.D.N.Y.2001) ("[W]hen a written agreement between the parties, such as an insurance policy, stipulates a shorter limitations period, the shorter period governs"). Accordingly, the Court now addresses the question of when

plaintiff's benefits claim accrued and, when the applicable three-year statue of limitations commenced.

Prudential argues that plaintiff's claim accrued. pursuant to the Policy, on February 3, 2006 when proof of his claim was required. As this Court noted in Allwood v. Frontier Comm. of Rochester Telephone, Inc., courts in the Second Circuit generally follow the principles laid out in Miles v. New York State Teamsters Conference Pension and Retirement Fund Employee Pension Benefit Plan, 698 F.2d 593, 598 (2d Cir. 1983), which state that a plaintiff's ERISA cause of action accrues and the limitations period begins to run when the fiduciary has repudiated or denied benefits in a manner that is both clear and made known to the Plan beneficiaries. See Allwood, 2004 2202572 at *2 (W.D.N.Y. 2004); Medoy v. Warnaco Employees' Long Term Disability Ins. Plan, 43 F.Supp.2d 303, 306-07 (E.D.N.Y.1999); see also Larsen v. NMU Pension Trust of NMU Pension & Welfare Plan, 902 F.2d 1069, 1073 (2d Cir. 1990)(An ERISA cause of action accrues, and the statute of limitations begins to run, "when there has been a repudiation by the fiduciary which is clear and made known to the beneficiaries"); Mitchell v. Shearson Lehman Bros., 1997 WL 277381 (S.D.N.Y. 1997). This rule of accrual applies even when "a benefit plan prescribes a different accrual date, such as when "the proof of loss [is] required to be furnished," because to hold otherwise would allow an "insurer to simply bury a denial of coverage and wait for the statute of limitations to run." See Micciche v. Kemper Nat'l Servs., 2008 WL 794977 at 7 (E.D.N.Y. 2008) (quoting Mitchell, 1997

WL 277381 at *8); Flood v. GuardianLife Ins. Co., 2008 WL 199458 at *6 (E.D.N.Y. 2008).[5]

Plaintiff filed his complaint on April 12, 2007 and the denial letter from Prudential was sent to plaintiff on September 15, 2004. Assuming that the Court finds that Prudential's September 15, 2004 letter denying plaintiff's second request for reconsideration constitutes a repudiation of benefits that is both clear and made known to the beneficiary, it is still within the three year statute of limitations. Thus, plaintiff's suit is not time barred.

### III. Arbitrary and Capricious Standard of Review.

When considering an ERISA claim such as this, the Court must first determine the appropriate standard of review to conduct its analysis. The Supreme Court has held that:

> "a denial of benefits challenged under [ERISA] is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or construe the terms of the plan."

---

[5] Prudential cites to Burke v. PricewaterhouseCoopers LLP, Long Term Disability Plan et al., 537 F.Supp.2d 546 (S.D.N.Y. 2008), which was decided in February 2008. Prudential argues that "[i]n light of the contrary decisions interpreting the clear repudiation rule within the district courts in the Second Circuit and the fact that they precede the DOL regulations which apply to the instant case, Prudential submits that the reasoning set forth in the *Burke* decision most closely resembles the facts of this case and therefore Plaintiff's claim is time barred." See Def. Br. at 13. Prudential also recites all the reasons outlined in the Burke decision as to why Courts must look at Proof of Loss as the accrual date based on the policy. One of the reasons discussed in the Burke decision is the implementation of the new Department of Labor ("DOL") regulations, which creates deadlines for administrative decisions on claims filed under ERISA plans after January 1, 2002. The Southern District of New York Court stated that the DOL regulations mitigate the concerns raised in earlier cases in light of the consequences to administrators that fail to meet deadlines. Id. at 551. The Burke case acknowledges that "[n]o case in this Circuit has yet addressed the implications of the DOL regulations on the enforceability of a policy-prescribed date of accrual that begins when Proof of Loss is due." See id. at 51. While these arguments are legitimate, recent cases from other district courts in the Second Circuit cited above (one decided after Burke), still adhere to the principle that statute of limitations begins to run when there has been a repudiation by the fiduciary which is clear and made known to the beneficiaries and that the rule of accrual applies even when a benefit plan prescribes a different accrual date, such as when the proof of loss is required to be produced because to hold otherwise would allow an insurer to simply bury a denial of coverage and wait for the statute of limitations to run. See Micciche, 2008 WL 794977 at 7. Thus, until the Second Circuit rules on this issue, this Court follows its prior ruling.

- Page 15-

See Firestone Tire and Rubber Co., v. Bruch, 489 U.S. 101, 115 (1989).

Prudential argues that its decision to deny plaintiff benefits is entitled to substantial deference from the Court, and may only be overturned if the determination is found to be arbitrary and capricious. See Def. Br. at 17. Specifically, Prudential contends that it has exercised a grant of discretionary authority to determine benefit claims and thus the "arbitrary and capricious" should be applied by the Court. See id. Pursuant to ERISA, where the Administrator of a plan is vested with the sole, discretionary authority to: (1) interpret the plan; (2) determine coverage and eligibility; and, (3) construe ambiguous provisions of the plan, the Administrator's decision to grant or deny benefits is entitled to substantial deference, and in most cases, may only be overturned if the decision is arbitrary or capricious. See Firestone, 489 U.S. at 115; Fuller v. J.P. Morgan Chase & Co., 423 F.3d 104, 106 (2d Cir. 2005); Whitney v. Empire Blue Cross and Blue Shield, 106 F.3d 475, 477 (2d Cir. 1997); Sullivan v. LTV Aerospace and Defense Co., 82 F.3d 1251, 1255 (2d Cir. 1996).

Accordingly, if a plan grants the plan administrator discretionary authority to determine eligibility, the Second Circuit has held that the arbitrary and capricious standard of review will be applied. See Kinstler v. First Reliance Standard Life Ins. Co., 181 F.3d 243, 249-252 (2d Cir. 1999). Under the arbitrary and capricious standard, a denial of benefits "may be overturned only if the decision is 'without reason, unsupported by substantial evidence or

erroneous as a matter of law." Kinstler, 181 F.3d at 249, quoting Pagan v. NYNEX Pension Plan, 52 F.3d 438, 441-442 (2d Cir. 1995).

In the instant case, the Policy expressly grants Prudential with the discretionary authority to determine whether a claimant is disabled. The SPD provides that "The Prudential Insurance Company of America as Claims Administrator has the sole discretion to interpret the terms of the Group Contract, to make factual findings, and to determine eligibility for benefits. The decision of the Claims Administrator shall not be overturned unless arbitrary and capricious." See SOMF ¶ 10. Prudential is clearly vested with the discretion to determine eligibility for benefits provided under the plan. Because the SPD makes clear that Prudential is a fiduciary who has discretionary authority to interpret the terms of the Policy and to determine eligibility for and entitlement to benefits under the Policy, I determine that an arbitrary and capricious standard of review is appropriate. See Celardo v. GNY Automobile Dealers Health & Welfare Trust, 318 F3d 142 (2d Cir. 2006) (Plan Administrator's interpretations of the plan's terms can be disturbed only if he interprets the plan in a manner inconsistent with its plain words and courts are not to substitute their own judgment for that of the decision-maker); O'Shea v. First Manhattan Co., 55 F.3d 109, 112 (2d Cir. 1995).

Thus, I conclude that the Policy confers discretionary authority upon Prudential and Prudential's decision relating to the denial of plaintiff's benefits must be upheld unless it is shown to be arbitrary or capricious. See Firestone, 489 U.S. at 115. Under this

deferential "arbitrary and capricious" standard of review, Prudential's decision will be upheld if it is rational in light of the plan's provisions. See Kinstler, 181 F.3d at 249.

### IV. Prudential's Decision Denying Benefits to the Plaintiff Was Not Arbitrary and Capricious.

Under the arbitrary and capricious standard of review, a Plan Administrator's decision to deny benefits will not be overturned unless the decision was "without reason, unsupported by substantial evidence or erroneous as a matter of law." See Pagan, 52 F.3d at 442; Fuller, 423 F.3d at 107; see also, Darling v. E.I. DuPont De Nemours & Co., 952 F.Supp. 162, 165 (W.D.N.Y. 1997). To establish that a Plan Administrator's decision is supported by "substantial evidence," the administrator must demonstrate that the decision is supported by "such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the [administrator] ...." See Celardo, 318 F.3d at 146. There must be more than a "scintilla" of evidence to support the Plan Administrator's decision, but there need not be a preponderance of the evidence, provided the evidence relied upon by the Plan Administrator is reliable. See id. (citing Miller v. United Welfare Fund, 72 F.3d 1066, 1071 (2d Cir.1995)).

Further, where a district court reviews a benefits determination under the arbitrary and capricious standard, it is limited to considering only the information available to the fiduciary at the time of the benefits determination in question. See Miller, 72 F.3d at 1072. Accordingly, this Court's review is limited to the evidence that was before Prudential when plaintiff's claim for accidental death and dismemberment benefits was denied. In his opposition

papers, plaintiff contends that "there was no conviction of driving while intoxicated, nor was there any legal establishment of the proper withdrawal of blood, nor any legal examination of the procedures used[.]" See Pl. Br. at 2. Moreover, plaintiff argues that "due to the fact that [he] had made a cell phone call from his vehicle, which [he] believes caused the accident [which] indicate that the Defendant's decision was arbitrary and capricious" See id. A review of the administrative record in this case reveals that plaintiff did not submit any evidence to prove that he was not intoxicated at the time of the accident. See Miller, 72 F.3d at 1072. If plaintiff wanted such evidence to be considered during the appeals process, it was his burden to submit that evidence. Plaintiff had numerous opportunities to refute the finding that he was intoxicated at the time of the accident and yet did not submit proof during any of the intervening periods he appealed the denials of benefits from Prudential.

In the instant case, I find that the Prudential's decision was supported by the substantial evidence in the record, and accordingly was neither arbitrary nor capricious. All the evidence in the administrative record supports Prudential's finding that plaintiff's loss was due to his intoxication. Prudential's determination that plaintiff's claim was not covered due to the intoxication exclusion in the Policy was reasonable and clearly supported by the administrative record. Prudential's denial of plaintiff's claim was not arbitrary and capricious. Thus, Prudential's motion for summary

judgment is granted and plaintiff's Complaint is dismissed with prejudice.

## **CONCLUSION**

For the reasons set forth above, I find 1) that plaintiff's suit was not time barred and was brought within the three-year statute of limitations period; 2) that Prudential's denial of plaintiff's claim was not arbitrary and capricious. Accordingly, Prudential's motion for summary judgment pursuant to Federal Rules of Civil Procedure 56 is granted and plaintiff's Complaint is dismissed with prejudice.

**ALL OF THE ABOVE IS SO ORDERED.**

                                              s/ Michael A. Telesca
                                              MICHAEL A. TELESCA
                                    United States District Judge

Dated:    Rochester, New York
          July 24, 2008